## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

RUBEN LUCIANO-JIMENEZ,            :

         Petitioner            :      CIVIL ACTION NO. 3:25-1369

    v.            :      (JUDGE MANNION)

CLAIR DOLL, Warden, *et al.,*            :

        Respondents            :

### MEMORANDUM

Petitioner Ruben Luciano-Jimenez files the instant motion to enforce this Court's previous order (Doc. 36), contending that his current detention at the Orange County Correctional Facility in Goshen, New York, violates the Court's directive for his release and closure of the case. (Doc. 1).[1] For the reasons that follow, the motion will be **DENIED** and the case **DISMISSED**.

### I.    BACKGROUND

Petitioner, a citizen of the Dominican Republic who has lived in the United States for over ten years, has been placed in removal proceedings and had been previously detained by federal immigration authorities around

---

[1] The motion to enforce this Court's previous order was originally filed to Docket No: 3:20-cv-2384 at Doc. 40. After review by this Court, it was determined that it is a new habeas request and refiled to the instant docket number. Original doc. numbers 40, 41, 42, 43 (3:20-cv-2384) are now doc. numbers 1, 2, 3, 4 (3:25-cv-1369).

2020 at the York County Prison located in York, Pennsylvania. That detention was due to a prior drug conviction and pursuant to 8 U.S.C. §1226(c). (Doc. 1 at 1 (Docket No: 3:20-cv-2384)). After being detained for more than two-and-a-half years during the pendency of his immigration proceedings, Petitioner sought a writ of habeas corpus from this Court on December 18, 2020, asserting the length of his detention, without an individualized bond hearing, was prolonged and arbitrary in violation of the Due Process Clause of the Fifth Amendment of the United States Constitution. (*Id.* at 2 (Docket No: 3:20-cv-2384)).

By joint stipulation, Petitioner and the Government jointly requested the Court to grant the petition to the extent that Petitioner be afforded a bond hearing in accordance with the precedents set forth in *German Santos v. Warden Pike County Corr. Facility*, 965 F.3d 203, 214 (3d Cir. 2020) and *Chavez-Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469, 475, 477-78 (3d Cir. 2015). (Doc. 9 at 1). Two days later, on March 2, 2021, the Court approved the stipulation and ordered a bond hearing. (Doc. 15 (Docket No: 3:20-cv-2384)). The hearing was held on March 25, 2021, whereby the Immigration Judge denied bond, determining that Petitioner was "a danger by clear and convincing evidence." (Doc. 18-2 (Docket No: 3:20-cv-2384)). Petitioner argued that the sole basis for the denial was due to his prior

controlled substance conviction, notwithstanding any other mitigating evidence, and that, as a result, he was not afforded the "individualized bond hearing" required by this Court's order. (Doc. 18 at 1-2 (Docket No: 3:20-cv-2384)).

On April 22, 2021, Petitioner filed a motion to enforce the Court's previous order, which was referred to then Chief Magistrate Judge Mehalchick.[2] In her report and recommendation, Judge Mehalchick concluded that the hearing before the Immigration Judge "did not comport with this Court's directive or with the due process requirements for such hearings." (Doc. 33 at 3 (Docket No: 3:20-cv-2384)). She noted that "[c]riminal activity occurring over four years ago cannot be the sole reason for a conclusion that Petitioner is a current danger to the community." (*Id.* at 4) (citing *Chi Thon Ngo v. I.N.S.*, 192 F.3d 390, 398 (3d Cir. 1999) and *Lawson v. Gerlinski*, 332 F. Supp. 2d 735, 738, 745-46 (M.D. Pa. Aug. 20, 2004)). Judge Mehalchick further found that the conditions of supervised release imposed by the United States Probation Office for Southern District of New York for Petitioner's prior conviction remained adequate to ensure the safety of the community, and she therefore recommended that Petitioner

---

[2] The Honorable Karoline Mehalchick was appointed as a United States District Judge for the Middle District of Pennsylvania, receiving her commission on February 5, 2024, and entering on duty on February 6, 2024.

- 3 -

be released under those existing supervised release terms.[3] (Doc. 33 (Docket No: 3:20-cv-2384)). On July 6, 2021, the Court adopted this recommendation in its entirety, and Petitioner was subsequently released from detention subject to the aforesaid terms. (Doc. 34 (Docket No: 3:20-cv-2384)).

Since his release from immigration custody and the expiration of his supervised release in the Southern District of New York, Petitioner has been arrested and charged on four separate occasions with the following criminal offenses:

1. March 7, 2023, arrested by Paramus Police Department on charges of receiving stolen property.[4]

2. December 6, 2023, arrested by Yorktown Police Department on felony charges of Criminal Possession Weapon – 3rd degree and Possession Forged Instrument – 2nd degree.

---

[3] At the time of the previous proceedings before this Court, Petitioner was still subject to supervised release related to his prior felony conviction for conspiracy to distribute and possession with intent to distribute heroin. *United States v. Ruben Luciano De Los Santos*, Case No. 1:17-cr-00185 (S.D.N.Y. Feb. 27, 2019). The period of supervision has since expired.

[4] The Government notes that, although the Form I-213 lists the arrest date as "March 27," this is clerical error; the criminal history records correctly reflect that the arrest took place on March 7. (Doc. 3 at 5; *see also* Doc. 3-5).

- 4 -

3. May 4, 2024, arrested by the New York Police Department on felony charges of grand larceny – 4th degree and criminal possession stolen property – 4th degree.

4. May 27, 2025, arrested by the New York Police Department on misdemeanor charge of menacing.

(Doc. 3 at 5-6; *see also* Docs. 3-5, 3-6). The Government asserts that it has been unable to locate the dispositions for the criminal arrests from 2023 and 2024; however, it reports that Petitioner was arraigned on the charges from the arrest on May 27, 2025. (Doc. 3 at 6). Petitioner responds that the 2023 and 2024 charges were either dismissed or reduced to a single municipal ordinance violation, and he anticipates the 2025 charges may be dismissed in the near future. (Doc. 4 at 12).

After Petitioner's May 27, 2025 arrest, U.S. Immigration and Customs Enforcement ("ICE")—a component agency under the Department of Homeland Security ("DHS")—issued an administrative detainer to the New York authorities. (Doc. 3 at 7). The detainer was not honored, and Petitioner was subsequently released from state custody. (*Id.*). On June 19, 2025, ICE/DHS arrested Petitioner at his Bronx residence, finding that he was subject to mandatory detention under 8 U.S.C. §1226(c)(1)(A) based on his 2016 drug trafficking conviction and his deportable status as an alien present

- 5 -

without admission pursuant to 8 U.S.C. §1182(a)(6)(A)(i). (Doc. 3 at 7). Furthermore, Petitioner's case before the Immigration Court was transferred from Baltimore to New York, where his master calendar hearing was scheduled for July 9, 2025. (*Id.; see also* Doc. 3-4).

## II.    DISCUSSION

This memorandum briefly outlines the jurisdictional framework governing mandatory detention under 8 U.S.C. §1226(c)—including the INA's mandate for detention and key Supreme Court guidance from *Demore v. Kim* and *Jennings v. Rodriguez*—before turning to why the court lacks jurisdiction to entertain the petitioner's re-detention claim.

Until the late 1980s, the Attorney General had broad discretion to detain or release aliens during removal proceedings. *See Demore v. Kim,* 538 U.S. 510, 519 (2003) (citing 8 U.S.C. §1252(a) (1982)). Over time, Congress became concerned that criminal aliens were being released too readily, enabling them to evade removal and potentially reoffend. *See id.* at 518–21. In response, "Congress limited the Attorney General's discretion over custody determinations with respect to deportable aliens who had been convicted of aggravated felonies" and then expanded the definition of "aggravated felonies" in subsequent legislation to subject more criminal aliens to mandatory detention. *Id.* at 520–21. At the same time, Congress

authorized the Attorney General to release lawful permanent residents during removal proceedings if they did not pose a flight risk or danger. *Id.* at 521. The current iteration of mandatory detention appears in §1226(c), which requires detention of criminal aliens "when released" from criminal custody and permits release only for limited witness protection purposes.

The constitutionality of this categorical detention scheme was tested in *Demore*, in which the petitioner argued that §1226(c) violated due process because there was no individualized determination of danger or flight risk. 538 U.S. at 514. The Supreme Court upheld the statute in a narrow ruling, recognizing that while the Fifth Amendment applies to deportation proceedings, detention is an intrinsic part of the process. *Id.* at 523-4. The Supreme Court accepted that Congress could rely on reasonable presumptions about the risk posed by criminal aliens, *id.* at 526, but emphasized the brevity of detention as central to its decision: "the detention at stake under §1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal." *Id.* at 530. Justice Kennedy concurred, warning that prolonged detention might require an individualized inquiry into danger or flight risk. *Id.* at 532–33.

- 7 -

Although *Demore* suggested temporal limits, the Supreme Court in *Jennings v. Rodriguez*, 583 U.S. 281, 303-06 (2018), rejected the premise that §1226(c) carries an implicit time limit on pre-removal detention. Nonetheless, the Third Circuit has emphasized that *Jennings* did not disturb the constitutional holding in *Diop v. ICE/Homeland Security*, 656 F.3d 221 (3d Cir. 2011), which held that indefinite detention under §1226(c) may violate due process if unreasonably prolonged. *Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 278 (3d Cir. 2018) ("*Jennings* 'did not call into question [the] constitutional holding in *Diop* ... that detention under §1226(c) may violate due process if unreasonably long.'"). Thus, even after *Jennings*, aliens detained under §1226(c) may still mount as-applied due process challenges to their detention, as reaffirmed in *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 210 (3d Cir. 2020).

When reviewing such as-applied challenges to the constitutionality of continued mandatory detention under §1226(c), "[t]he most important factor is the duration of detention." *See id.* at 211. Additionally, the Court must consider the other circumstances of detention, including: (1) "whether the detention is likely to continue" (2) "the reasons for the delay, such as a detainee's request for continuances"; and (3) "whether the alien's conditions of confinement are 'meaningfully different' from criminal punishment." *Id.*

(quoting *Chavez-Alvarez*, 783 F.3d at 478). There is no "bright-line" threshold for reasonableness; rather, whether continued detention is reasonable is a "highly fact-specific" inquiry. *Id.* at 210 (quoting *Chavez-Alvarez*, 783 F.3d at 474).

This legal backdrop culminated in the Court's 2021 decision to release the Petitioner, concluding that his two-and-a-half-year detention under §1226(c) had become unconstitutionally prolonged. The Court ordered that Petitioner receive an individualized bond hearing before the Immigration Judge—requiring an inquiry into whether continued detention was "necessary for the purposes of ensuring that the Petitioner attends removal proceedings and that his release will not pose a danger to the community." (Doc. 15). Although the hearing occurred, the Immigration Judge summarily upheld detention solely based on Petitioner's prior conviction. Adopting Judge Mehalchik's report, this Court found that a criminal conviction four years earlier could not alone support a finding of current danger, and that the existing supervised-release conditions imposed by the U.S. Court for the Southern District of New York sufficed to protect public safety. Accordingly, the Court held that the bond hearing failed to satisfy due process, and, as a result, it ordered Petitioner's immediate release—an order fully complied with by the Government. Importantly for the matter at hand, this order did not

preclude future re-detention. The Government may have lawfully re-detained Petitioner if new circumstances justify such action under §1226(c), without violating the release. Even further, the Government could have re-detained Petitioner provided it conducted an individualized bond hearing that met due process requirements.

Since the 2021 order, new circumstances have clearly arisen. Petitioner has been arrested on four separate occasions in New York since his release, with the most recent charges still pending. Each of these arrests occurred well after the 2021 order and outside the jurisdiction of this Court. Following these developments, Petitioner was re-detained by ICE in New York—not within this district—and was in custody there at the time the current motion was filed. The Government's basis for the present detention rests entirely on conduct that postdates the original release order by more than two years and bears no connection to this district.

Given this, the legality of Petitioner's current detention cannot be addressed by this district court as jurisdiction over his immediate custodian are the courts in New York. To hold otherwise would contravene the well-established "immediate custodian" rule, which requires that habeas petitions challenging present physical custody be brought in the district where the custodian is located. *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004) ("The

plain language of the habeas statute thus confirms the general rule that for core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement."). As such, this Court lacks jurisdiction to review the present detention, which arises from distinct, subsequent conduct occurring entirely outside this district.

Petitioner attempts to resist dismissal by asserting that this Court somehow retains jurisdiction over his present detention on the ground that it allegedly violates the Court's 2021 release order. That argument is unavailing. The 2021 order was fully complied with: Petitioner was released pursuant to the Court's directive after it found his then-prolonged detention unconstitutional. The current detention, however, arises from separate and new circumstances that occurred years later and in a different jurisdiction, and thus does not implicate the prior order or provide a basis for continued jurisdiction.

Petitioner cites *Anariba v. Director, Hudson County Correctional Center*, 17 F.4th 434, 444–48 (3d Cir. 2021), where a habeas petitioner originally detained in the District of New Jersey filed a petition there. After the petition was dismissed without prejudice, the petitioner was transferred to Louisiana, and later sought to reopen the case in New Jersey. The Third Circuit held that the District of New Jersey retained jurisdiction despite the

transfer. But *Anariba* is inapposite. In that case, the court's jurisdiction was premised on an open habeas proceeding and a continuous custodial relationship arising from the same underlying detention. Here, by contrast, Petitioner's original habeas petition was granted, he was released, and his present detention stems from entirely distinct conduct occurring more than two years later in a different district. There was no transfer of custody while litigation was pending—this is an entirely new and separate custodial episode.

Petitioner also relies on *Gibbs v. Frank*, 500 F.3d 202 (3d Cir. 2007), in which the Third Circuit held that a district court retained jurisdiction to enforce a conditional writ requiring retrial or release within a specified time period. But again, that case involved a conditional order that expressly contemplated ongoing judicial oversight. No such order exists here. This Court issued a final order of release, which was executed by the Government without further dispute. There is no ongoing obligation left to enforce.

In a last-ditch attempt, Petitioner cites *Guerrero v. Sabol*, 2019 WL 1977922 (M.D. Pa. May 3, 2019), to support his argument challenging the legality of his current detention. However, *Guerrero* is distinguishable from the present case on multiple grounds. In *Guerrero*, the petitioner did receive an individualized bond hearing and was ordered released after the court

found that the government failed to show by clear and convincing evidence that continued detention was necessary, as Guerrero "was neither a current flight risk nor a current danger to the community." 2019 WL 1977922 at *3. Here, by contrast, the Petitioner was released because he never received an individualized bond hearing, and no such hearing took place. Moreover, *Guerrero* involved detention under 8 U.S.C. §1231(a), which governs detention after a final removal order, whereas this case involves mandatory detention under 8 U.S.C. §1226(c) during removal proceedings and imposes a different legal standard.

Furthermore, in *Guerrero*, the government initially justified re-detaining the petitioner based on alleged violations of release conditions but later withdrew that rationale, resulting in the petitioner's release and dismissal of the motion as moot. 2019 WL 1977922 at *7-8. In contrast, the Petitioner here was never released subject to any new conditions imposed by ICE or this Court; rather, his release stemmed solely from this Court's prior ruling finding that he had not been afforded an individualized bond hearing or risk assessment. His only conditions of supervision were those predating his ICE detention, imposed by the U.S. Probation Office for the Southern District of New York for his prior felony conviction. And while the *Guerrero* court observed that the petitioner's continued detention might have violated the

court's previous release order if charges had not been dismissed, this statement was not essential to the court's holding. *Id.* In sum, *Guerrero* is a non-precedential district court opinion with materially different facts and procedural posture, and, importantly, it does not support Petitioner's contention that this Court retains jurisdiction over his current detention or that the Government's compliance with the prior release order has been breached.

The Court therefore agrees with the Government that none of the cases cited by Petitioner support the proposition that a district court retains jurisdiction over a habeas petitioner who is later re-detained in a different district based on a distinct set of facts from the one previously considered. Jurisdiction, if at all, over the lawfulness of the current detention rests with the district court where the petitioner is confined and where his immediate custodian is located—in this case, the Southern District of New York.

## III.   CONCLUSION

For the foregoing reasons, the Court will **DENY** Petitioner's motion to enforce (Doc. 1) and dismiss the case. An appropriate order follows.

**MALACHY E. MANNION**
**United States District Judge**

**DATE:** 7/29/25

25-1369-01 Order

- 14 -